The next case today is Dr. Juan M. Rodriguez-Rivera v. Allscripts Health Care Solutions, Inc. at all, appeal number 20-1936. Attorney Ubarri, please introduce yourself for the record and then proceed with your argument. Once again, good afternoon, your honors. My name is Jose Luis Ubarri and I appear on behalf of rebuttal. You may. Okay, there is no dispute in this case that defendant Allscripts LLC destroyed over 11,000 electronic health records that belong to plaintiff appellant's patients and were under its care, custody, and control. The district court dismissed this case on three grounds. The first one is that the district court ruled that plaintiff was bound to arbitrate his claim in North Carolina under an arbitration agreement. The second ground for dismissal was that the district court did not have a specific jurisdiction over the defense. And the third ground was that plaintiff's allegations did not plead a plausible claim and the court thereby dismissed the entire case with prejudice leaving plaintiff and his patients redundant. Regarding the arbitration decision made by the district court, this decision is wrong as a matter of law because it put on plaintiff the burden of establishing that there was not an arbitration agreement. The party who claims a right to arbitration under a contract has to come forward and prove first the existence of the arbitration agreement. Secondly, that the party against whom arbitration is being sought signed that agreement. And third, that the matter is thought to be arbitrated is within the terms of the contract. Counsel, isn't it clear from the end-user license agreement that there's an arbitration clause there? What more can this opposing counsel or opposing party have to do? Well, the end-user license agreement that the court relied upon and the contract that the executed between Novatec and Allscripts, which is a business associate agreement and a EULA agreement that predates plaintiff's contract with Novatec for the storage of the a contract that had been executed before the plaintiff entered into a contractual relationship with Novatec. So that by itself makes that contract worthless and useless to establish a right to arbitration. Counsel, can you clear up something? I thought that, was it, are we talking about two end-user agreements? In other words, when someone in your client's office went to set up the software, was there some kind of end-user agreement that had to be agreed upon before the software could be used? It is my understanding that the software was to store medical records electronically. Every patient, if that's what you're asking, did not have to consent. No, I'm saying before your client could start using the software, did he have to consent to arbitration in order to even operate the software? That's what I'm trying to figure out. In other words, these CLIC agreements that we've seen in other... Go ahead. My client denies and did so under penalty of perjury of having executed any agreement that contains an arbitration clause. And the question is, why does the defendant who admits that he destroyed those 11,000 electronic health records, that had them under their custody, is not able to come forth and explain where is the contract? That is the one... Counsel, didn't the district court order some limited discovery here? Is that correct? And that included a deposition of the owner of the Puerto Rico company, Novatec, I guess, would be distributing this software licensing product. And that official, he testified to the proposition that your client had signed this end-user licensing agreement. Is that correct? That was his testimony? No, your honor. His testimony was flip-flop. He said that he thought that he might have... He also testified in the same deposition that he didn't recall the details of what transpired with the contract of the doctor. He also testified that there were different models of the contract that were used with different physicians. And so his testimony is not conclusive as to anything. And I revert back to my original position. Why didn't the defendant, who's the one who claims the right of penetration, come forth with at least an explanation as to why they don't have the contract? So let me understand. So that's your point. I mean, there is a dispute about what your client did or did not sign. They seem to rely, the defendant here seems to rely on one version. Actually, to be more accurate, the district court seemed to rely on one version of that dispute to conclude that there was an agreement signed by your client that included this arbitration clause. And it's your point that that sort of reverses who has the burden of establishing the existence of the arbitration agreement. That's basically your argument, correct? That is my argument. Yes, you're correct, Your Honor. And more than that, the district court made the credibility determinations based upon the inconclusive flip-flop testimony of Mr. Carmuega. Four minutes remaining. Four minutes. Didn't allow the plaintiff to put his case or to testify under oath so that the judge could assess his credibility. And he does assess credibility based upon an inconclusive deposition testimony and erroneously struck all efforts by plaintiffs to challenge the facts by striking his statements under penalty of perjury and never press the defendants, which is the most important matter, to explain why you guys have this 11,000 electronic health records and you're unable, you admit that you destroyed them, but you're unable to say where is the contract under which you were storing them. The defendants were the ones who had the burden of proving the existence of an arbitration agreement, not the plaintiff. And the court actually placed upon the plaintiff the burden of proving a negative. Plaintiff was asked to prove that there was no arbitration agreement. That's our main contention in that regard. Now, as to the other matters, as to the lack of jurisdiction, it goes without saying that if you committed tort, like in this case, that has, even if you're outside of Puerto Rico, if the impact is felt in this jurisdiction, the local courts, the Puerto Rico courts under the Longhorn statute and consistent with the 14th that's Hornbill law. And lastly, the claim that the plaintiff made no plausible claim when plaintiff alleges that he's a physician licensed in Puerto Rico, that he's the rheumatologist that put those records under the care, custody, and control of all squibs to safekeep them and to that those records were destroyed by the defendants. And he's unable to access those records, which puts him in jeopardy with his patients and in his profession and at the risk of losing his license. Now, if that's, if those factual allegations do not suffice to state a claim, that is the essence of our counsel. The impact of the allegedly tortuous act outside of Puerto Rico, its impact on Puerto Rico, that's an important factor, but there is more to consider in deciding whether there was specific jurisdiction. I gather, I mean, there are allegations in the complaint about the way in which the defendant sought business in representatives to Puerto Rico to develop business. Isn't that correct? I mean, there are allegations like that in the complaint. Is that correct? Yes, there are. The defendant not only sent a representative to Puerto Rico, there was one Chad Novitski who went on several locations that that was testified by Mr. Carmuega to meet with him and to sign the contract whereby Novatec PR was selling the licenses in Puerto Rico, the licenses to store, because there's another important factor here, and that this has two components. One is the use of the MyWay software. That's time. Which is access. May I finish? Yes, briefly sum up. Yes, the access to the software by the doctor putting information, and the other component is the storage, which is the safekeeping that's exclusively in the hands of the defendants. Thank you. Any other questions? No, thank you. Attorney Yubari, please mute your audio and video at this time. Attorney Antonetti, if you could introduce yourself on the record to begin. Hi, good afternoon. My name is Salvador Antonetti, again, counsel for defendants at police, Allscripts Healthcare Solutions, LLC, and its subsidiary Allscripts Healthcare, LLC. Because they're so similar, I will refer to the subsidiary Allscripts Healthcare, LLC as Allscripts, and the holding company as AHS. Counsel, before you do that, let me advance what I have a question. Again, you can answer whenever, but if we were to agree with your position that this matter has to be arbitrated, or there's no venue, or no jurisdiction, then the decision of Judge Dominguez on the merits would have to be if you elect to resolve it that way. This is a very important point. None of the three grounds for dismissals are for lack of Article III jurisdiction, and the Steele Company Supreme Court opinion that directed courts to resolve jurisdictional issues first applies only to Article III constitutional jurisdiction issues. With respect to statutory jurisdiction, and certainly for arbitration clauses, the court has the authority to decide to affirm on any ground that it finds sufficiently developed in the record below. In fact, this circuit has a long-standing prudential doctrine that it will resolve the case and affirm on the ground below that it finds most solid, or most convenient, or at least complicated. In fact, in that regard, we urge you to consider, and we request that you consider affirming on the dismissal for lack of the earlier stated claim under Rule 12b-6. And that is actually an important point. These are options. Certainly, if you decide to rule on arbitration, not on the grounds that, yes, that would be an election, but it is within this court's authority. Could you just start by showing how, by explaining to us why the district court didn't arbitration agreement between these parties? Oh, yes. Well, first of all, Your Honor, the district court's ruling, and in the end, the argument that we developed below, and that is reserved for an appeal, is that the plaintiff, actually, there was testimony, and there is no controversy that the end-user license agreement was provided to the plaintiff. The, this is an important point, the discovery, the limited jurisdictional discovery, discovery as to arbitration and jurisdiction that was conducted, the witness actually was provided by plaintiff. This is actually the sworn statements that are on the record were drafted by his attorneys, by the plaintiff's attorneys, and that witness, during his deposition, did state that he had given a copy of the end-user license agreement and other contractual documents to the plaintiff. It is true that the plaintiff has sought to refuse. And to your client, and to your client, who is the entity seeking to enforce the arbitration, or compel arbitration. Yes, and we have not been able, in fact, in terms of the way that this case developed, we originally developed other arguments and found, because we had not been able to find a copy of the end-user license agreement in our records. However, when the witness that was actually identified by the documentation, we then worked with that, that's the copy of the end-user license agreement dated December of 2008. Now, an important detail here, that was part of a package, as he testified in his deposition, and as arises from those contracts. That was a prior agreement, prior to the sale of the software to the doctor. But your honor, this is, what I'm getting is, that's a package of documents that he was supposed to give to future clients. The way it worked was, he would buy the subscription and then resell it to doctors. And he was supposed to, and he testified he did, in fact, give to his clients the different contractual documents, including the end-user license agreement. As the title suggests, it's the end-user at the doctor's office. And what he testified was that yes, he did get a copy of the end-user license agreement for the doctor. There is, whether or not, a statement on the penalty of perjury sufficient alone to break the generation of material fact, putting that aside, because the doctor has said that he didn't sign it. What he does not say, he's very, very careful to say he didn't sign it. Fine. The law is not what the plaintiff's counsel has stated now, that the contract has to be signed. The testimony is that he was given a copy. He was on notice of the terms of the end-user license agreement. The distributor, Mr. Carnawega, testified under oath that he, and he was subject to cross-examination, that he delivered a copy to the plaintiff. And the terms of that end-user license agreement, like a CLQR agreement, said that use constitutes consent to the terms, and that if there was disagreement with the terms, he could just simply stop using the software and his money would be an uncertainty, where there shouldn't be really any complexity or uncertainty at all. The party comes into court and says, we want the court to compel arbitration. We have an agreement that was signed by the opposing party, acknowledging this obligation to pursue arbitration, if we have agreements of some kind. The court says, fine, show me the document. It's your burden to do so. Show me the document. The document is never produced. The court never imposed that obligation. We get into all this contested testimony. Who said what? Who produced what document? If I may, that's not how it developed. We raised the issue once we had the document. The document was there on the record and was produced by the person who actually testified and was not refuted by anybody, that he delivered a copy to both. Now, apparently, you filed a motion to dismiss claiming that parties were subject to a mandatory arbitration provision, so you raised that, and it was pursuant to an order of permitting discovery, to ascertain limited discovery, that this whole deposition business came about. But you raised it first, and the burden was on you to show that there was an agreement to arbitrate. And the document is there, and the witness actually... Well, the document isn't there. That's the problem. That's what Judge DePez just said. The document is not there. It's a copy of the document. That's a Rule 1004 issue, Your Honor, in which the original does not appear, but the witness has a copy of the document because he testified that that's the copy of the document he gave to the plaintiff. And there is no bad faith, which would be the reason for not admitting. Did he say that exact end-user agreement was the exact same document that he gave to the plaintiff? He said that that was a document that he had given to the plaintiff. The way the question worked was, you remember this, yes, that you give a copy of this to the plaintiff. You didn't say it was signed. The plaintiff denies that, but he does not deny this is important. He took the care to reject the allegation. Did he say that there were different iterations of the agreement over the time that he was selling? Afterwards. This was the first client. In June of 2009, this was his first client, his first contract, and he did not testify that there were any changes with this client. This was the first one to sign up for the system. And so he used the form that he had. And also, the rest of the testimony was that the terms of the agreement never changed. So even if that were relevant, but not focusing on that right now, I'm just saying, part of the testimony was that we're the same. And in fact, that's why plaintiff focuses a little bit too much on a 2011 version. The point of that was simply to help the court understand that there was a continuity in terms of there was always an arbitration clause. But the testimony we're really relying on is the testimony that he handed the plaintiff a copy of the document that he had in December of 2008 as part of a packet of how he's going to do business and actually selling the software. He also says, and he gave a copy to your client too, and your client can't produce the copy. Correct. That's pretty strange. We haven't found it. This is a 13-year-old document, Your Honor. We don't know. Why shouldn't the burden of production fall upon your client to produce the document that's the basis for the motion to compel arbitration? I mean, okay, it's 13 years. It's missing. That's pretty significant. Your Honor, we did two things. First of all, if we're talking about burdens, the plaintiffs also, there's a whole issue in the record, but I'm not going to go into too much detail, but the party had stated to the court that they had a copy of the document and then were ordered by the court to produce it and did not. There was this whole order to compel. But second, we did produce it by means of the document that we obtained from the witness, Mr. Carmuega. The rule doesn't have to be that we have to have it in our files as long as we get it and produce it to the court, and that's what we did. We had a copy. We have the test. What we're building the argument is we obtained the document from Mr. Carmuega. But what Mr. Carmuega produced was not something that was signed by the doctor. Correct, and it doesn't have to be signed. He testified that that's the document, copy of the document that he gave to the doctor. And there's no, and unlike the signature issue, the doctor never specifically says that he didn't receive it. He said he didn't sign it, and he puts this talismanic weight on the issue of signature, and there it doesn't have to. I do have two other very important sets of- Five minutes remaining. With respect to the merits, we do request that the court consider ruling on the merits instead. Because after all, this is a case, to be very clear, about a client, a doctor, who begins receiving services- You mean on the merits of the underlying- The rule 1286 argument, the failure to set a claim argument. To put this in context, this is a plaintiff who entered into a relationship with Novatec, the reseller, who paid the reseller an amount of money to receive, therefore, a license to use software to then access information that was held on servers in North Carolina owned by our client. He paid for those services starting in July of 2009 until sometime in 2013. He then discovers in 2017 that his data is no longer available in 2017. By the way, just to be very, very strict, and this is a discovery issue, we actually haven't admitted anything with respect to who erased or not erased the data. But for purposes of this argument, we will accept it as giving the credence to the allegations of the complaint. The point is this, that the plaintiff's theory, really what it comes down to is that he stopped paying for services, and yet our client had the duty for about three, four more years to keep the data in storage and not delete it, even though he wasn't paying for it anymore. We think that is an important matter for the court to keep in mind when looking at the allegations. Second- What does the contract say? Okay, Elkin, what does the contract say about your client's ongoing or lack thereof obligation as to what to do with the data in the event of a breach? Well, Your Honor, that's part of the problem here now, which is that the plaintiff says that this is a tort claim, not a contract claim. In fact, this is another procedural point that's very important to keep in mind. He has waived all of his other claims because he does not include an assignment of error that discusses in any way the dismissal of any of his other claims and his complaints, including breach of contract or anything else. The only thing he mentions and purports to preserve on appeal, and we don't think he even does that, is the issue of the alleged tort claim. He expressly disavows the contract theory and goes all in on a tort claim. The problem is his discussion, we think, is insufficient to preserve his argument on appeal because in his opening brief, he provides no discussion or merely assumes a legal matter. He seems to believe apparently that the presumption that inferences on factual allegations should be given in favor of the complainant does not apply to legal allegations. And the problem here is this. He spends most of his time discussing about who it was that deleted the data and goes into extensive detail about that. And for purposes of this appeal, we will concede that the court is required to accept the allegation that the data as a factual matter was deleted by my clients. And that's the event. Counselor, can I ask a question? This is Apropos. I'm looking at the district court's decision, and I understand it seems to be it's only a negligence claim that is before us on appeal. The district court says that those, citing the 12B6 standard, that the factual allegations are insufficient. But the district court never explains why they're insufficient. At least, I can't find anything in the decision that tells us why they did not, at least for purposes of negligence claim. Do you understand why the district court dismissed it? I think so, Your Honor, because the district court agreed with our position in our briefs and our motions below. And in fact, after all that, what this court, we understand, with all due respect, should be doing is looking at the arguments that were raised to the court below. And the court could have simply granted, issued a two-sentence order, saying, in view of the plaintiff, the defendant's arguments. Just tell us what you argued. Your time is running out. Tell us what you argued below. Well, with respect to tort, I'm sorry. With respect to the tort plea, specifically, the issue of the lack of foundation for the claim of a duty. That's a legal question. And we explained to the court that there is no legal duty to preserve the documents beyond the contractual terms. And there is no independent source of duty identified by plaintiff developed anywhere. And the court's, the appellant's opening brief lacks any discussion of the legal source of a duty. It assumes it. It basically says, oh, you know, there are these laws and EIPA, et cetera, and it doesn't develop anything. That is insufficient to preserve the argument for appeal. And we think the reason is because actually those statutes do not create such a duty. And that's been our position all along. And the fact is they failed to pay for four years almost. And there is no reason for our clients to keep that data on their servers, particularly when plaintiffs were actually on notice a couple years back that our company was switching and deprecating that software and moving on to a new platform. So the fact remains that there is simply no tort claim here. Thank you. Thank you. I have not developed, I just want to point out if I may, one second. Your time has expired. Sorry, what? Your time has expired. Thank you, Attorney Antonetti. If you could please mute your camera and your audio. And Attorney Ubari, you have a three minute rebuttal. Please introduce yourself on the record again to begin. Yes, again, my name is Jose Luis Ubari on behalf of Plaintiff Appellant. First and foremost, I would like to direct my attention once, the court's attention once again to the contract under which arbitration was ordered. Mr. Ubari, could you start with your opponent's last point that there's, you haven't pointed out where the legal duty is? The legal duty is Article 1802 of the Puerto Rico Civil Code. In effect, at that time, that requires or that provides that any person or any party who causes by negligence wrong to another is liable for the harm done. And it's a simple, straightforward negligence case in which the defendant had a duty to preserve this data as they leave. It doesn't sound very simple in a situation where for a number of years, four years or so, your client had stopped paying for this service and yet apparently assumed that the defendant would continue to preserve these records indefinitely. That doesn't, I mean, I would think the failure to make payments on an ongoing basis for this record keeping function could affect the legal duty to preserve these documents. I mean, there's nothing, he clearly didn't, he wasn't paying. That's correct. There's no dispute about that, right? Well, there is no factual basis to establish that my client wasn't paid. He was making his payments and at some point he wrote because he received an email from Allscripts in which he was told that his account was on hold because of a non-payment. And he contacted Allscripts and they gave him a claim number. The claim was open. He continued making his payments to Novatec and he never heard back from Allscripts. He then decided to switch providers from Allscripts to, I believe it's Aprima, a competitor. And in the process of making that change, when the Aprima people aren't able to gather, to get the data from Allscripts, Dr. Rodriguez is informed that his data has been destroyed. So there is no factual basis on the record to support the claim that the doctor was aware that he was not paying because he was paying. And he was never told either that your records are going to be deleted because you're not paying. There's no evidence of that. Are we able to determine whether there's a duty absent the contract terms? Yes, under Article 1802 of the Puerto Rico Civil Code once again and under Puerto Rico's case law. But does Puerto Rico, what you just read to us as to what 1802 says, does that also encompass the whole concept of duty and what the duty is? Yes, it's a duty not to harm, not to cause harm to another, to other parties. And so any kind of harm? I know you have the Civil Code there. Any kind of harm, like the duty can be imposed by law, by custom, by regulation. And in this case, at the bare minimum, Article 1802 requires that you exercise due care, that you don't dispose of this information. What is the law, custom, or regulation that imposes the duty? Again, it's Article 1802 that was in effect at the time. And I believe that in our brief or in my brief, let me see if I can find it, the First Circuit case precisely discussing that, that point. It's Hilton Hotels, Hilton El Conquistador Management, 964 Feb 3rd 77. And this court ruled in that case, it stated that the duty of care may arise by statute or regulation as a result of a special relationship between the parties that has arisen through custom, or as a result of a traditionally recognized duty of care particular to the situation. And I submit that there's a duty of care when you're entrusted with over 11,000 electronic medical records, not freezers or blenders that are regulated by federal statute, that you're talking about the records of thousands of people with their personal information. You have to go beyond a run-of-the-mill situation. And this defendant said the duty to preserve those records. And there is no evidence at all in this record that the plaintiff was informed that the records were going to be destroyed before their destruction, and that they were going to be destroyed because he had paid his monthly payments because he was paying them. And the only, I mean... Thank you, Counselor. Thank you. You're welcome. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting.